IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| NATHANIAL MCDONALD, | : | |
| Plaintiff, | : | |
| vs. | : | CIVIL ACTION NO. 09-00056-KD-N |
| WAYNE GRAY, *et al.*, | : | |
| Defendants. | : | |

REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a Complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on the Motion for Summary Judgment of Defendants Correctional Captain Wayne Gray, Correctional Sergeant Chandra Johnson, and Correctional Officer David Kervin (Docs. 25, 26) and Plaintiff's response thereto. (Doc. 28). After consideration of these pleadings, and for the reasons set out below, it is recommended that the Motion for Summary Judgment of Defendants be granted and that Plaintiff's action be dismissed with prejudice.

I.  FACTS AND PROCEEDINGS

From its review of the record, the Court notes the following allegations which are material to the issues addressed in this Report and Recommendation. While incarcerated at the Fountain/J.O. Davis Correctional Facility, Plaintiff claims that on December 2, 2008, "and continuously," he has been denied due process of law. (Doc. 4 at 4). Specifically, Plaintiff alleges the following:

> On December 2, 2008 – January 12, 2009, Defendants Chandra Johnson, Capt. Gray and David Kervin acted in concert to deprive me of my Due Process which is guaranteed and protected under the 14th Amendment to the United States Constitution; whereas, on November 27, 2008, Chandra Johnson per orders of Capt. Gray and David Kervin maliciously and arbitrarily charged the Plaintiff with Rule # 91: Conspiracy to commit a violation of Department or Institutional Rules from Reg. # 403 (sic). On 12-18-08 Plaintiff was subsequently taken to a hearing and adjudicated guilty by Defendants herein and sanctioned to 15 days loss of phone, store and visitation privileges, 15 days of punitive segregation. Defendant Kervin was the investigating officer and hearing officer in disciplinary # JOD08d-362 and incident report # JOD08-739 which violated Plaintiff procedural and substantive Due Process violation (sic). On 1-12-09 Warden Ferrell disapproved this Due Process violation.

(Doc. 4 at 4). Plaintiff claims that Captain Gray "ordered Defendants Chandra Johnson and David Kervin to write and prosecute a bare-bone accusation of [him]." (Id. at 5). He further claims that Defendant Johnson "acted per orders of Capt. Gray to write [him] a conspiracy disciplinary with no evidence in support for such allege charge without probable cause (sic)." (Id.). Plaintiff also asserts that "[o]n 11-27-08-01-12-09, Defendant Kervin investigated and conducted the subsequent disciplinary hearing a conflict of interest (sic)." (Id.).

Plaintiff filed with this Court a copy of the disciplinary report charging him with violating rule # 91, specifically Conspiracy to Commit a Violation of Departmental or Institutional Rules, on November 27, 2008, at 7:45 p.m. (Doc. 15 at 13). The report notes that Correctional Sergeant Chandra Johnson brought the charges, with the circumstances of the violation being that "[o]n or about November 27, 2008 inmate McDonald, Nathaniel B/144921 did conspire with several other inmates to get drugs and other contraband brought into the facility." (Id.). The report reflects that a hearing was held on December 18, 2008, and that the hearing officer, Correctional Officer David Kervin, found Plaintiff guilty of the charge. (Id. at

2

15). The hearing officer recommended fifteen days loss of phone, store and visitation privileges, as well as fifteen days of segregation. (Id.). However, according to the report, this recommendation was not entered, as Warden Jerry Ferrell, on January 12, 2009, ordered the charge expunged, noting that there was "[n]o specific testimony to substantiate the charge." (Id.).

On March 6, 2009,[1] Plaintiff filed the present § 1983 action, alleging that he was denied due process of law by Defendants when they charged him with the subject disciplinary, conducted his hearing, and, upon, finding him guilty, ordered him to fifteen days loss of privileges and fifteen days of segregation. (Doc. 4). Plaintiff has requested a jury trial, and seeks nominal, compensatory, and punitive damages in the amount of $300,000. (Doc. 4 at 7).

In their Answer and Special Report filed on May 14, 2010, Defendants deny that they violated Plaintiff's constitutional rights and assert various defenses including absolute and qualified immunity.[2] (Docs. 25, 26). On May 20, 2010, the Court entered an Order converting

---

[1] Plaintiff originally filed this action on February 2, 2009. (Doc. 1). However, Plaintiff's Complaint was prepared on an outdated form, and thus, on February 27, 2009, this Court ordered Plaintiff to refile his Complaint using this Court's current form. (Doc. 3, Order).

[2] It is unclear whether Plaintiff is suing Defendants in their individual or official capacities or both. As state officials, Defendants are entitled to absolute immunity from suit for damages in their official capacities. See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment).

Furthermore, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). Until recently, the Court followed the mandatory procedure of Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part, Pearson v. Callahan, __ U.S. __, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009), which required the Court to determine whether the plaintiff's allegations, if true, established a constitutional violation and, if the first step was satisfied, to determine whether the right at issue was clearly established at the time of the alleged
(Continued)

3

Defendants' Answer and Special Report to a Motion for Summary Judgment. (Doc. 27). On June 3, 2010, Plaintiff filed a response in opposition to Defendants' Motion for Summary Judgment, reasserting his claims against Defendants, and additionally stating that he was moved from a less restricted camp to a "medium camp" as a result of this disciplinary. (Doc. 28 at 2). Defendants' motion and Plaintiff's response thereto are now before the Court.

## II. SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact….'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. Barfield v. Brierton, 883 F.2d 923, 934 (11th Cir. 1989). However, the Court is only to "make all *reasonable* inferences in favor of the party opposing summary judgment … not to make all *possible* inferences in the nonmoving party's favor." Torjagbo v. United States, 285 Fed. Appx. 615, 619 (11th Cir. 2008) (emphasis in original).

Rule 56(e)(2) states that:

---

misconduct. While that procedure is now discretionary, as opposed to mandatory, see Pearson, id., the Court finds it beneficial in this case. Having found herein that Plaintiff's evidence does not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201.

> [w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted). "Summary judgment is mandated where a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

In a civil action filed by an inmate, although drawing "all justifiable inferences in [the inmate's] favor," federal courts

> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

Beard v. Banks, 548 U.S. 521, 529-30 (2006) (internal citation omitted). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is "no genuine issue for trial."'" Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

## III.     DISCUSSION

As discussed above, Plaintiff seeks redress pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations arising out of a disciplinary charge and proceeding while incarcerated at the Fountain/J.O. Davis Correctional Facility.[3]  (Docs. 4, 28).  According to Plaintiff, these deprivations occurred on December 2, 2008, and continuously.  (Doc. 4 at 4).  Specifically, Plaintiff claims that Defendants Gray, Johnson, and Kervin violated his due process rights under the Fourteenth Amendment.  (Doc. 4).

Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

42 U.S.C. § 1983 (1994).  For the reasons set forth below, Plaintiff's § 1983 claim fails as a matter of law.

The Due Process Clause protects against deprivations of "life, liberty, or property without due process of law."  U.S. Const. amend. XIV.  Plaintiff does not appear to be claiming deprivation of life or property.  Therefore, he is only entitled to due process if he was deprived of a liberty interest within the meaning of the Fourteenth Amendment.

> The Supreme Court has stated that there are two circumstances in which a prisoner can be deprived of a liberty interest beyond the deprivation associated with the

---

[3] The record indicates that Plaintiff was being held in the Fountain/J.O. Davis Correctional Facility in December, 2008, pursuant to a conviction for murder in May of 1986. (Doc. 4 at 6).

6

> prisoner's confinement. See Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300, 132 L. Ed. 2d 418 (1995). First, a liberty interest may arise from the "Due Process Clause of its own face," which extends procedural safeguards to a prisoner when his liberty is restrained in a way that exceeds the sentence imposed by the court. Id. Secondly, states may create liberty interests by conferring certain benefits to prisoners, the deprivation of which "impose[s] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.

Wallace v. Hamrick, 229 Fed. Appx. 827, 829 (11th Cir. 2007) (unpublished).[4]

> With respect to convicted and sentenced prisoners, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242, 96 S. Ct. 2543, 2547, 49 L. Ed. 2d 466 (1976). This is because the Due Process Clause, standing alone, confers no liberty interest in freedom from state action taken "'within the sentence imposed.'" Hewitt v. Helms, 459 U.S. 460, 468, 103 S. Ct. 864, 869, 74 L. Ed. 2d 675 (1983).

West v. Higgins, 346 Fed. Appx. 423, 426 (11th Cir. 2009) (unpublished).

    A.    <u>Disciplinary Segregation</u>

It is well settled that there is no right inherent in the Constitution to be free from confinement in disciplinary segregation. Sandin, 515 U.S. at 486. Therefore, Plaintiff possesses a liberty interest related to his alleged fifteen day confinement in segregation at the Fountain/J.O. Davis Correctional Facility only if the State has created such a liberty interest.[5] Id. at 483-84.

---

[4] "Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority." Lanier Constr., Inc. v. Carbone Props. of Mobile, LLC, 253 Fed. Appx. 861, 865, 2007 WL 3307384, *3 n. 5 (11th Cir. 2007) (unpublished).

[5] It is unclear to the Court whether Plaintiff actually spent time in disciplinary segregation, or whether this punishment was simply recommended by the hearing officer, (Continued)

7

The Supreme Court has ruled that liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force…nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484 (internal citations omitted). In Sandin, the court concluded that confinement to disciplinary segregation was not a "dramatic departure from the basic conditions" of an inmate's sentence, also holding that this type of confinement was not the "type of atypical, significant deprivation in which a State might conceivably create a liberty interest." Id. at 485-86.

"'[T]he touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of the regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" Wallace, 229 Fed. Appx. at 830 (quoting Wilkinson v. Austin, 545 U.S. 209, 223 (2005), quoting Sandin, 515 U.S. at 484).

Because Plaintiff has no liberty interest in remaining free from disciplinary segregation, his allegation that he was denied due process during the disciplinary hearing is without merit. Accordingly, Plaintiff's due process claim concerning the fifteen days of disciplinary segregation fails as a matter of law.

### B. Loss of Visitation, Store and Telephone Privileges

As to Plaintiff's alleged fifteen day loss of visitation, store, and telephone privileges, this claim also fails. The Constitution does not grant an inmate a right in visitation, store and

---

Defendant Correctional Officer David Kervin, at the conclusion of Plaintiff's disciplinary hearing on December 18, 2008. (Doc. 15 at 15). The record reflects that this recommendation, along with the recommendation for the fifteen day loss of store, telephone, and visitation privileges, was disapproved by Warden Ferrell on January 12, 2009. (Id.).

telephone privileges. See Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989) (finding an inmate does not have a protected interest in visitation arising from the Due Process Clause); Moore v. Pemberton, 110 F.3d 22, 23 (7th Cir. 1997) (finding no loss of liberty or property when prisoner received as part of his disciplinary punishment a two-week loss of commissary privileges); Walker v. Loman, 2006 WL 3327663 at *1 and *3 (M.D. Ala. Nov. 15, 2006) (holding the 90-day loss of store, telephone and visitation privileges, recommended custody increase, and referral for possible free-world prosecution did not result in the deprivation of a liberty interest) (unpublished).

Moreover, Alabama courts have determined that a prisoner does not have a state-created liberty interest in store, telephone, and visitation privileges. Dumas v. State, 675 So. 2d 87, 88-89 (Ala. Crim. App. 1995). An inmate's ability to visit, to shop, and to use the telephone is heavily restricted while in prison, as are most aspects of an inmate's life. Sandin, 515 U.S. at 485. And the further restriction of these privileges for a short period of time is a less severe punishment than confinement to disciplinary segregation. Such restriction is not "atypical," nor is it a "significant hardship" under the Sandin analysis. See id. at 475, 485. Thus, as Plaintiff has no liberty interest in telephone, store and visitation privileges, there has been no violation of due process. Accordingly, this claim fails as a matter of law.

C. Transfer

Last, Plaintiff alleges, although not in his Complaint, that he was moved from a "less restricted" to a "medium" camp as a result of the actions by Defendants without benefit of due process. (Doc. 28 at 2). While the record conflicts with Plaintiff's allegation, even if true,

Plaintiff has suffered no constitutional violation.[6] "It is well settled that the decision where to house inmates is at the core of prison administrators' expertise." McKune v. Lile, 536 U.S. 24, 39 (2002) (citing Meachum v. Fano, 427 U.S. 215, 225 (1976). Prison administrators are not required to conduct hearings before transferring inmates to different prisons, even if "life in one prison is much more disagreeable than in another." Meachum, 427 U.S. at 225; see Kramer v. Donald, 286 Fed. Appx. 674, 676 (11th Cir. 2008) (unpublished) (inmate "did not state a due process claim because he has no constitutionally protected liberty interest in being classified at a certain security level or housed in a certain prison"). As Plaintiff has no liberty interest in where he is housed, his claim of denial of due process with regard to his alleged transfer fails as a matter of law.

As discussed above, Plaintiff has no liberty interest in telephone, visitation or store privileges, nor does he have a liberty interest in remaining free from disciplinary segregation, or a liberty interest in which prison facility he is housed; consequently, he cannot establish a constitutional violation with respect to actions taken concerning these issues.

## IV.     CONCLUSION

Based on the foregoing, the Court concludes that Defendants Correctional Captain Wayne Gray, Correctional Sergeant Chandra Johnson, and Correctional Officer David Kervin are entitled to summary judgment in their favor on all claims asserted against them by Plaintiff.

---

[6] The Court notes that the first change of address submitted by Plaintiff to this Court was on April 14, 2010, when Plaintiff advised the Court that he is now living at the Red Eagle Work Center in Montgomery. (Doc. 22). Prior to that time, all legal correspondence in this action was received from and sent to Plaintiff at his address listed on the Complaint at the Fountain/J.O. Davis Correctional Facility. While the Court notes that in the filings submitted by Plaintiff, page 12 of Document 15 appears to be a "pending reclassification" document dated 12/29/08, indicating that Plaintiff would be recommended for an increase in custody as a result of violating rule #91 and rule #50, there is a handwritten note stating: "Voided. Per Warden III, Jerry Ferrell on 12/31/08."

Accordingly, it is recommended that Defendants' Motion for Summary Judgment be GRANTED, that this action be DISMISSED with prejudice, and that judgment be entered in favor of all Defendants and against Plaintiff on all claims.

The attached sheet contains important information regarding objections to this recommendation.

DONE this 20<u>th</u> day of September, 2010.

<u>   s/Katherine P. Nelson   </u>
KATHERINE P. NELSON
UNITED STATES MAGISTRATE JUDGE

# MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[7] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

> s/KATHERINE P. NELSON
> UNITED STATES MAGISTRATE JUDGE

---

[7] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  Fed. R. Civ. P. 72(b)(2).